In the Matter of the CITY OF LACKAWANNA, Respondent, for a Reconstruction of the Structure Carrying McKinley Parkway over the Tracks of the Baltimore and Ohio Railroad Company. BALTIMORE AND OHIO RAILROAD COMPANY, Appellant. DEPARTMENT OF TRANSPORTATION, Respondent.

Fourth Department, May 23, 1974.

*Wiser, Shaw, Freeman, Van Graafeiland, Harter & Secrest* (*John M. Wilson* of counsel), for appellant.

*Nicholas Haragos* (*Norman F. Walawender* of counsel), for City of Lackawanna, respondent.

*Darrell W. Harp* (*Joseph C. Davidson Jr.*, of counsel), for Department of Transportation, respondent.

· GOLDMAN, J. The Baltimore and Ohio Railroad Company (Railroad) appeals from the order of the Department of Transportation of New York State (successor to the New York Public Service Commission), dated January 10, 1973, which ordered that the "Contract Plans, Specifications and Estimate of Cost in the amount of $847,000" for the reconstruction of a structure carrying a street in the City of Lackawanna over the tracks of the Railroad "be and they hereby are approved".

These proceedings were instituted by the City of Lackawanna, by petition filed January 7, 1970, which sought an order directing the reconstruction of the bridge which had carried McKinley Parkway over the tracks since 1901. A hearing was held on February 18, 1970, pursuant to section 91 of the Railroad Law. On September 1, 1970 the Public Service Commission made its order "That the Commissioner of the Department of Transportation shall reconstruct the structure known as McKinley Bridge * * * substantially in conformity with the plan marked" and "shall prepare the necessary plans, specifications and estimate of cost of such reconstruction, and shall submit the same to the Commission for its approval". None of the parties objects to the reconstruction of the bridge and the commissioner's direction in that respect is not in issue.

The sole question raised by appellant Railroad is its concern that it may be required to contribute to the construction costs of the bridge. It claims that the commission's examiner erred when he refused to permit the Railroad to raise the question of allocation of costs during the hearing. The Railroad contends that a 1901 contract between it and the City of Buffalo, whereby the city agreed that after construction of the bridge it would thereafter be maintained and repaired by the city at its own expense and at no cost to the Railroad, was relevant and material to the hearing and should not have been excluded by the examiner.

The presence of the City of Lackawanna as a party, and not the City of Buffalo, requires explanation. In 1969, after the bridge had fallen into a state of disrepair, Lackawanna acquired the bridge from Buffalo. It is the Railroad's position that Lackawanna assumed Buffalo's contract responsibilities of maintenance and repair and confirmed that obligation by making repairs without cost to the Railroad. That this was the arrangement is borne out by an exhibit which provides in part that " upon receipt of the sum of fifty thousand dollars the City of Lackawanna will assume complete ownership, including the responsibilities of repairs and maintenance, of said McKinley Park overhead bridge ". It is significant that neither order of the commission makes any reference to the validity of the 1901 and subsequent contracts and both of them are entirely silent on the question of costs or apportionment thereof.

The hearing was held pursuant to section 91 of the Railroad Law and its purpose was to " determine what alterations or changes, if any, shall be made " to the existing bridge. The original order of the Commissioner of the Public Service Commission simply directed the preparation of plans, specifications, estimates and related matters. The second order of approval was made by the Commissioner of Transportation because on March 1, 1970, the functions under section 91 of the Railroad Law were transferred to and assumed by the Department of Transportation (L. 1970, ch. 267).

The Railroad argues that the denial of its efforts to prove the 1901 and 1969 contracts may have precluded it from later successfully objecting to the Transportation Department's apportionment of costs. Subdivision 3 of section 94 of the Railroad Law provides: " The expense of every change made in an existing structure in accordance with and ordered pursuant to the provisions of section ninety-one shall be borne seventy per centum by the state, fifteen per centum by the municipal corporation, and fifteen per centum by the railroad corporation or corporations affected thereby."

Subdivision 5 of section 94 provides that " the expense of construction shall be paid in the first instance by the party directed by the commissioner of transportation to progress the work ". The order directs the Department of Transportation " to reconstruct the structure ". Subdivision 6 of section 94 makes provision for an accounting " between the railroad corporation and the municipal corporation or the commissioner of transportation of the amount expended by each ". Finally, section 96 provides that " The supreme court at a special term

shall have the power in all cases of such decisions and orders by the commissioner of transportation to compel compliance therewith ''. Thus we find that controversies over the various matters dealt with in the sections above enumerated, and particularly with respect to payment of expenses and costs, are submitted to the Supreme Court for resolution.

It is the position of the Department of Transportation, with which we agree, that since neither of the commissioners' orders allocated the costs of reconstruction of the bridge and there is no dispute over the need for the bridge, appellant Railroad has not been aggrieved by the orders. The Transportation Department's brief succinctly and correctly states '' However, the order appealed from here did not even deal with said contractual rights. Said order then was obviously not binding with respect to such rights and appellant was not aggrieved thereby. * * * However, in none of the cases there cited by appellant did the Public Service Commission entertain conflicting allegations as to such agreements as an issue, take evidence thereon or determine same. In short, no litigation with respect thereto took place. Rather, *that task, when it arises, is one for the courts.*'' (Emphasis supplied.)

In *Matter of Staten Is. R. T. Ry. Co.* (220 App. Div. 80, 103, affd. 245 N. Y. 643), the railway company appealed from two orders of the Transit Commission directing the elimination of grade crossings and argued that the costs of the work would bankrupt the railway. In affirming the orders of the Transit Commission the Appellate Division concluded (p. 103) as to question of payment that '' the orders in question do not compel action thereunder; when it is attempted to enforce them, the question may be raised ''. The Railroad is concerned that the exclusion from the hearing of the proof with reference to the contracts may leave it defenseless to question payment for the ultimate costs as provided for in subdivision 3 of section 94 of the Railroad Law. As we have indicated, and as concurred in by the Transportation Department, it cannot be said that the prior orders of the commissioners are final on this point and, therefore, that the matter is *res judicata*. In *McAneny* v. *New York Cent. R. R. Co.* (238 N. Y. 122), where the Transit Commission sought a pre-emptory mandamus under section 96 of the Railroad Law to compel appellant Railroad to obey a subsequent order of the commission to construct an overhead bridge at its own expense, the court in holding that the matter was not *res judicata* stated (pp. 129-130):

"The determination of the question who should construct the entire structure was not essential to the prior determination by the commission and was not in terms decided thereby. That the railroads should do the work is an inference from the language of the statute, but not a necessary inference. The substance of the former order is that the street shall cross the railroad tracks on a bridge as specified. It is not in itself an order that the railroad companies shall construct the entire bridge at their expense, nor is that its necessary legal effect. Having regard both to the interests of the public and the railroads, such an order should not be given an unreasonable and arbitrary meaning for the purpose of applying the doctrine of *res adjudicata* to the order now before us for review. It should be construed merely as an approval of the general plan of carrying the street over the railroad tracks."

In the case at bar the only issues decided by the prior orders are the necessity of reconstruction of the bridge and approval of the plans, specifications and estimates of cost. If in subsequent orders the Transportation Department shall direct the Railroad to pay a percentage share pursuant to subdivision 3 of section 94 and the Railroad shall refuse to obey the orders, the department may proceed to try to enforce its orders under section 96 of the Railroad Law and section 132 of the Transportation Law. The Railroad will then have an opportunity to raise such defenses as it may have, including the question of the 1901 contract. It may well be, that if the Railroad is so advised it may, before orders are made with respect to sharing of costs, seek a declaratory judgment for a declaration of its rights under the 1901 contract. (See *Western N. Y. & Pa. Ry. Co.* v. *City of Buffalo,* 296 N. Y. 93.)

Both the Department of Transportation and the City of Lackawanna argue for a dismissal of the appeal on the ground that appellant failed to take a timely appeal from the order of the Public Service Commission dated September 1, 1970. They urge that the 1970 order was dispositive of all the issues to be determined by the commission. The first order, they claim, determined precisely what alterations or changes should be made to the crossing in question. With some cogency, the Railroad contends that the first order was interlocutory in nature, made no final decisions and that it was not until the second order of 1971 was there finality to the commission's action. It was not until that order, it asserts, that the contract plans, specifications and actual cost estimate were finalized and approved. In

view of our decision holding that under neither order is the Railroad aggrieved, we do not reach this question.

The order appealed from should be affirmed.

MARSH, P. J., MOULE, SIMONS and DEL VECCHIO, JJ., concur.

Order unanimously affirmed without costs.